

### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT COOKEVILLE

| | | |
|---|---|---|
| Patrice Berdnik, | ) | Docket No. 2016-04-0328 |
| Employee, | ) | |
| v. | ) | |
| Fairfield Glade Comm. Club | ) | State File No. 78710-2016 |
| Employer, | ) | |
| And | ) | |
| Starnet Ins. Co., | ) | Judge Robert Durham |
| Insurance Carrier. | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on March 28, 2017, upon the Request for Expedited Hearing (REH) filed by Patrice Berdnik. Ms. Berdnik filed the Request to determine if Fairfield Glade Community Club (FGCC) is obligated to provide benefits for her alleged work-related low back injury. The dispositive issue is whether Ms. Berdnik's low back complaints arose primarily out of and in the course and scope of her employment with FGCC. The Court holds the evidence submitted by Ms. Berdnik is insufficient at this time to establish she is likely to prevail at a hearing on the merits regarding the compensability of her alleged injury. However, a secondary issue is whether Ms. Berdnik has provided sufficient evidence to entitle her to a panel of physicians in compliance with Tennessee Code Annotated section 50-6-204 (2016). The Court holds this to be the case, and thus FGCC is obligated to provide her with a panel from which she may choose an authorized physician to provide medical care pursuant to statute.

### History of Claim

In February 2014, while living in New York, Ms. Berdnik underwent surgery to fuse her lumbar discs at L4-L5. She testified the bones fused well, despite the fact that a rod placed in the spine to provide additional support had come loose, and she had an excellent resolution of her back problems. In a few months, she returned to work, was

1

playing golf, and engaged in unrestricted activity. She testified that in July 2014, she experienced a twinge in her back from playing golf, but that quickly resolved; and that while she did complain of numbness and tingling in her left foot in 2014, this issue was due to a cyst near her lumbar spine and was unrelated to any lumbar spine problems.[1]

In March 2015, Ms. Berdnik and her husband retired and moved to Fairfield Glade, Tennessee. Ms. Berdnik obtained part-time work to supplement her income, and in March 2016 began working for FGCC, initially as a hostess at Stonehenge restaurant. After a month, she started work at the "Turn Shack," an outdoor snack bar located near the restaurant and next to Stonehenge golf course.

Ms. Berdnik worked three twelve-hour shifts each week. Her job duties included serving customers and keeping the snack bar stocked. The snack bar did not have its own ice machine, so Ms. Berdnik would periodically take a golf cart to the restaurant basement where she would fill three five-gallon buckets with ice and bring it back to the snack bar to refill the coolers. The bottom lip of the ice machine reached to her mid-thigh, so Ms. Berdnik had to bend at the waist, reach into the ice machine and scoop out the ice with a plastic scoop. It required three scoops to fill each bucket. Ms. Berdnik would then load the buckets on the golf cart, take them to the snack bar, and unload them into the coolers and the soda fountain. During the summer months, she might have to do this five times or more during her shift. Occasionally, the basement ice machine would be empty, so she would have to get ice from the upstairs kitchen and carry the buckets down a flight of stairs to the golf cart.

Ms. Berdnik testified that, prior to September 4, 2016, her low back did not trouble her and she was able to engage in unrestricted activities, including regular rounds of golf. On September 4, as she was bent over inside the ice machine scooping ice, she felt a twinge or spasm in her low back resulting in immediate pain radiating down her back and into her legs. Ms. Berdnik testified that she stretched and iced her back once she got home in the hope the pain would improve; however, that did not occur. She was due to be off work for several days, which she believed would give her back time to heal, but her manager, Jennifer Jeffries, called and asked her to fill in since they were short-handed. Ms. Berdnik testified she told Ms. Jeffries she could not do so since she had hurt her back while getting ice and needed time to rest.

Ms. Berdnik's back did not improve, and on September 22, she went to her primary care provider, N.P. Julie Livesay, at Infinity Health Care Center.[2] Ms. Berdnik became a patient with Infinity in June 2015 when she saw N.P. Sean Birdwell. She

---

[1] Although Ms. Berdnik provided substantial testimony regarding her medical history in New York, no medical records were made an exhibit at the hearing.
[2] FGCC offered a number of medical records from Infinity Health Care Center to which Ms. Berdnik objected on the grounds that they were not certified or signed by a physician. Therefore, the records were not admitted on the grounds of hearsay but were marked as Exhibit 5 for identification only.

testified she provided N.P. Birdwell with her history, including her lumbar fusion and the loose rod, but denied that she told him her back pain and sciatica were chronic and increasing, and that, in fact, she was not suffering from any back pain at the time. She testified that in August she called in to Infinity to have her medication for acid reflux refilled but was told that N.P. Birdwell was no longer there and she needed to come in for another evaluation with N.P. Livesay. She did so and repeated her history, but again denied she told her that her back pain was increasing.

Ms. Berdnik testified that when she saw N.P. Livesay on September 22, she told her about the September 4 work incident and rated her pain as three out of ten. N.P. Livesay provided Gabapentin and anti-inflammatories for treatment. Ms. Berdnik returned to Infinity on several occasions, but her pain continued. She also underwent an MRI of her lumbar spine at N.P. Livesay's recommendation, which revealed mild degenerative disc disease and central canal stenosis at L3 and L4. (Ex. 6 at 8.)

On October 11, the carrier for FGCC denied Ms. Berdnik's claim based on "her prior medical records" and "no specific event" denoting a work injury. (Ex. 2.) Ms. Berdnik continued to work for FGCC until November 12. FGCC offered her a position at Druid Hills Snack Shop in December, but she testified she was forced to reject the offer because of her back pain.

On December 26, Dr. Stacy Carlton with Infinity evaluated Ms. Berdnik. Ms. Berdnik told her she suffered a work injury three months earlier, resulting in the sudden onset of persistent pain in her back and down both legs. Dr. Carlton diagnosed Ms. Berdnik with "lumbar pain with radiculopathy" and prescribed Gabapentin and anti-inflammatory medication. (Ex. 20.)

FGCC requested Ms. Berdnik undergo an independent medical evaluation with an orthopedist, Dr. Patrick Bolt. Dr. Bolt examined Ms. Berdnik and reviewed records from Infinity Health Care Center and from her surgery in New York. He diagnosed Ms. Berdnik with "acute on chronic low back pain with sciatica;" "hardware failure plus/minus pseudoarthrosis L4-5 arthrodesis;" lumbar spondylosis; and "transitional segment with congenital pseudoarthrosis L5-S1." He did not note any evidence of an acute injury other than her "sudden increase/recurrence in back pain and sciatica while bending over to get ice at work." (Ex. 7 at 2.)

Dr. Bolt responded to a series of questions from FGCC's counsel regarding causation. He noted an apparent discrepancy between Ms. Berdnik's history that she had not been suffering from back pain before September 4, 2016, and the records from Infinity Medical Center from July and August of 2015. Based upon those records, he stated it appeared Ms. Berdnik complained of back pain and sciatica in 2015, although he noted Ms. Berdnik did not receive any treatment for back pain or sciatica in 2015. He further observed that Ms. Berdnik's "work activities clearly played some role in her

3

increasing symptoms." *Id.* at 3.

Dr. Bolt concluded by stating it "appears [Ms. Berdnik] experienced a significant and considerable exacerbation/aggravation of her chronic low back pain and sciatica." However, based on the atraumatic event of bending over the ice machine, which she had done several times in the past; her significant pre-existing condition; and the lack of objective evidence of injury, he did not believe the September 4, 2016 incident contributed more than fifty percent to her current condition. *Id.*

### Findings of Fact and Conclusions of Law

As in all workers' compensation actions, Ms. Berdnik, as the claimant, has the burden of proof on the essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, she only has to come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits in order to meet her burden. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

In order to prevail on causation, Ms. Berdnik must establish she suffered an accidental injury that was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2016). An aggravation of a pre-existing condition is only compensable to the extent that the aggravation "arose primarily out of and in the course and scope of employment." *Id.*

Ms. Berdnik must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2016). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2016). Thus, lay testimony must generally be corroborated by expert medical testimony in order to meet the burden of proof regarding causation. *See Scott, supra,* at *12.

In this instance, the only medical opinion offered regarding causation was that of Dr. Bolt, who provided a medical evaluation at the request of FGCC. Given that he is not an authorized treating physician, his opinion is not entitled to a presumption of correctness. *See* Tenn. Code Ann. § 50-6-204(a)(3) (2016). Nevertheless, his opinion as to causation was that, based on a number of factors, Ms. Berdnik's current condition was not more than 50% caused by the September 4, 2016 work incident. There is no other medical opinion regarding causation.

4

For the reasons stated above, the Court concludes Ms. Berdnik failed to provide sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits regarding causation. As a result, her request for payment of previous medical expenses, temporary total disability benefits, and discretionary costs involving fax expenses is denied at this time.

However, Ms. Berdnik does not have to prove compensability in order to establish that FGCC is obligated to provide a panel of physicians from which she may choose an authorized physician. *McCord* at *16, 17. In *McCord*, the Workers' Compensation Appeals Board found that:

> [W]hether the alleged work accident resulted in a compensable injury has yet to be determined. Therefore, while Employee has not proven by a preponderance of the evidence that she suffered an injury arising primarily out of and in the course and scope of employment, she has satisfied her burden at this interlocutory stage to support an Order compelling Employer to provide a panel of physicians.

*Id.* Thus, the question becomes whether Ms. Berdnik has provided sufficient evidence to satisfy "her burden at this interlocutory stage" that she is entitled to a panel of physicians. *Id.* at 17. *See also Lewis v. Molly Maid,* 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *9 (Apr. 20, 2016).

The administrative rules governing an employer's obligation to provide a panel state, "[u]pon notice of any workplace injury, other than a minor injury for which no person could reasonably believe requires treatment from a physician, the employer shall immediately provide the injured employee a panel of physicians that meets the statutory requirements for treatment of the injury." Tenn. Comp. R. & Regs. 0800-02-01-.25(1) (2015).

In Ms. Berdnik's case, it is undisputed that she provided statutory notice to FGCC of a work-related incident involving her low back that occurred on September 4, 2016. However, FGCC did not provide her with a panel of physicians as required by law. Furthermore, Dr. Bolt's opinion was heavily predicated upon the accuracy of Infinity Health Care's medical notes, which Ms. Berdnik disputes, and he clearly felt Ms. Berdnik at least suffered a "significant and considerable exacerbation/aggravation" as a result of her work-related incident. As a result, the Court holds Ms. Berdnik has satisfied her burden at this interlocutory stage to require FGCC to provide her with a panel of back specialists from which she may choose an authorized physician in compliance with Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) (2016).

5

IT IS, THEREFORE, ORDERED that:

1. FGCC shall provide a panel of back specialists within Ms. Berdnik's community from which she may choose an authorized physician for evaluation, and if necessary, treatment of her alleged back injury in accordance with Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) (2016).

2. Ms. Berdnik's requests for temporary disability benefits and reimbursement of expenses are denied at this time, but may be reconsidered following examination by an authorized treating physician.

3. This matter is set for a Scheduling Hearing on **June 2, 2017**, at **2:00 p.m. Central Time**. The parties must call 615-253-0010 or toll-free at 855-689-9049 to participate in the Hearing. Failure to call in may result in a determination of the issues without your further participation.

**ENTERED THIS THE 31st DAY OF MARCH, 2017.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. First Report of Injury
2. Notice of Denial
3. Affidavit of Patrice Berdnik
4. Affidavit of Dalton Berdnik
5. Medical records from Infinity Health Care Center (for I.D.)
6. Medical records of Cumberland Medical Center
7. Report from Dr. Patrick Bolt
8. Email from Ms. Berdnik to Dan Linskens
9. Performance Review
10. Photograph of Snack Shop
11. Wage Statement
12. Medical bills
13. Summary of Ms. Berdnik's expenses
14. Various photographs
15. Photograph of ice machine
16. Photograph of ice machine upstairs

6

17. Photograph of stairwell
18. Photograph of door to snack shop
19. Photograph of snack shop
20. Records of Dr. Stacy Carlton

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Motion for Extension of Deadlines
5. Order Granting Employer's Motion for Extension
6. Employer's Position Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Benefits was sent to the following recipients by the following methods of service on this the 31st day of March, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Patrice Berdnik | | | X | Plkkwkan58@gmail.com |
| Mary Dee Allen | | | X | mallen@wimberlylawson.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov